**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------X

LUZGARDO MURILLO , NESTOR ANDRES GUAMPEARIAS, and JENNRY LUIS RAMOS GUERRERO, individually and on behalf of those similarly situated,

Plaintiffs

vs.

VAN LUU, BRENDON LUU, and BNJ GRANITE/CABINETS, LTD.,

Defendants.

--------------------------------------------------------X

**Case No. 25-5086**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Luzgardo Murillo, Nestor Andres Guampearias, and Jennry Luis Ramos Guerrero (collectively with FLSA Plaintiffs, "Plaintiffs"), through their attorneys McBrien Law P.C. and the Marlborough Law Firm, P.C., respectfully allege as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs and other similarly situated non-exempt laborers, including, but not limited to, stone finishers, installers, and installers' helpers (the "BNJ Laborers"), bring this action against Defendants, the owners and operators of BNJ Granite/Cabinets Ltd. ("BNJ" or "the Business"). At all relevant times, BNJ fabricated and installed granite and stone countertops and slabs. BNJ maintains its principal office and base of operations in Holbrook, New York.

2. The action is brought as a collective action pursuant to the Fair Labor Standards Act of 1938 ("FLSA") for willful failure to pay overtime premium compensation to Plaintiffs and other similarly situated workers when working more than forty hours in a workweek.

3. In addition, the action asserts individual and class action claims under the New York Labor Law ("NYLL") for willful failure to pay overtime premium pay when working more than forty hours in a workweek; failure to pay for all hours worked; failure to issue proper wage statements; and failure to issue proper notifications of pay rate pursuant to New York's Wage Theft Prevention Act.

4. Defendants maintained several unlawful policies and practices resulting in their failure to pay proper overtime and regular wages including Defendants' "No Overtime Premium Policy," their unlawful "Automatic Deduction Policy," their "Time Shaving Practices," and failure to issue wage statements and notifications or pay rate informing workers of their right to receive overtime when working more than forty hours in a workweek.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' New York State law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendants because they are domiciled within the State of New York.

7. Venue is proper in the Eastern District of New York because Defendants conduct business in this District and the acts and/or omissions giving rise to the claims herein allegedly took place in this District. Moreover, all of the Defendants are domiciled in this District.

**PARTIES**

8. Defendant Van Luu is an individual domiciled in Bay Shore, New York.

9. At all relevant times, Defendant Van Luu was an owner and operator and President and Chief Executive Officer of Defendant BNJ. Defendant Van Luu was in active control and management of BNJ, regulated the employment of persons employed by BNJ, including Plaintiffs, acted directly and indirectly in the interest of BNJ in relation to the employees, and was thus an employer of Plaintiffs and other similarly situated BNJ Laborers under the Fair Labor Standards Act and New York State Labor Law.

10. Defendant Brendon Luu is an individual domiciled in Suffolk County, New York.

11. At all relevant times, Defendant Brendon Luu was an operator of BNJ and, upon information and belief, an owner and Vice President of Defendant BNJ.

12. Defendant Brendon Luu was in active control and management of BNJ, regulated the employment of persons employed by BNJ, including Plaintiffs, acted directly and indirectly in the interest of BNJ in relation to the employees, and was thus an employer of Plaintiffs and other similarly situated BNJ Laborers under the Fair Labor Standards Act and New York State Labor Law.

13. Defendants Van Luu and Brendon Luu are hereafter collectively referred to as the "Individual Defendants."

14. Defendant BNJ Granite/Cabinets, Ltd. is an active New York corporation that maintains its principal place of business in Holbrook, New York.

15. At all times relevant to this action, BNJ was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. The enterprise had an annual gross volume of sales in excess of $500,000.

16. The Individual Defendants operate the enterprise through Defendant BNJ.

17. Plaintiff Nestor Andres Guampearias ("Guampearias") was employed by Defendants as an installer from March 2024 through September 2024.

18. Plaintiff Luzgardo Murillo ("Murillo") was employed by Defendants as a fabricator and installer from April 2023 through August 2024.

19. Plaintiff Jennry Luis Ramos Guerrero ("Guerrero") was employed by Defendants as a fabricator from June 2023 through August 2024.

20. On or about June 5, 2025, Plaintiffs served Defendants with a demand for inspection of shareholder records and notice to shareholders concerning Defendant BNJ Granite/Cabinets Ltd. pursuant to New York Business Corporation Law § 630.

21. To date, Defendants have not produced the shareholder information nor made the information available to Plaintiffs for inspection.

**Defendants' Failure to Pay Overtime Premium Pay**

22. Plaintiffs and other similarly situated workers were employed as BNJ Laborers by Defendants.

23. Plaintiffs and other similarly situated BNJ Laborers were non-exempt employees under the FLSA and the New York Labor Law.

24. Plaintiffs and other similarly situated BNJ Laborers have not received all of the overtime compensation owed to them when working more than forty hours in a workweek.

25. Defendants maintained several common pay practices and policies with respect to Plaintiffs and other similarly situated BNJ Laborers.

26. First, Plaintiffs and other similarly situated BNJ Laborers were subject to the Defendants' No Overtime Premium Policy.

27. Plaintiffs and other BNJ Laborers were not paid any premium for overtime hours worked.

28. Instead, Defendants paid Plaintiffs and other BNJ Laborers at their regular hourly rate or nothing at all for overtime hours worked.

29. Second, Plaintiffs and other similarly situated BNJ Laborers were subject to Defendants' Automatic Deduction Policy.

30. Defendants automatically deducted one hour per shift for lunch.

31. But Defendants did not permit Plaintiffs and other BNJ Laborers to take their full lunch breaks and often required them to work with no uninterrupted meal break at all.

32. Defendants' Automatic Deduction Policy resulted in an underpayment of approximately one and a half hours to two hours of unpaid time per week.

33. Third, Defendants regularly failed to pay Plaintiffs and other similarly situated BNJ Laborers for all of the hours they worked, by reducing the number of hours paid ("Time Shaving Practices").

34. Because Plaintiffs and similarly situated BNJ Laborers regularly worked more than forty hours per week, Defendants' Automatic Deduction Policy and Time Shaving Practices regularly resulted in the Defendants' nonpayment of wages that should have been paid at the overtime rate.

35. However, in instances where BNJ Laborers worked less than forty hours in a workweek, Defendants' Automatic Deduction Policy and Time Shaving Practices resulted in unpaid regular wages.

**Wage Statements**

36. At all relevant times, Defendants failed to issue accurate wage statements to Plaintiffs and all other BNJ Laborers in violation of New York Labor Law 195(3).

37. Most of the BNJ Laborers, including each of the Plaintiffs, were paid entirely in cash off-the-books and provided with no wage statements at all.

**Notifications of Pay Rate**

38. At all relevant times, Defendants failed to issue proper notifications of pay rate to Plaintiffs and the BNJ Laborers in violation of New York Labor Law 195(1).

39. BNJ Laborers, including each of the Plaintiffs, were issued no notifications of pay rate at all.

**Plaintiffs' Experience**

Plaintiff Guampearias

40. Plaintiff Guampearias_was employed by Defendants as a non-exempt installer from March 2024 through approximately September 2024.

41. Defendants paid Plaintiff Guampearias in cash off the books.

42. During the relevant period, Plaintiff Guampearias' regular hourly rate was $20.00 per hour.

43. Plaintiff Guampearias was subject to Defendant's No Overtime Premium Pay Policy. Plaintiff Guampearias regularly worked more than forty hours in a workweek, but he was never paid overtime premium pay for working overtime hours.

44. In at least one week in June 2024, Plaintiff Guampearias worked more than 57 hours but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

45. Plaintiff Guampearias was subject to the Defendants' Automatic Deduction Policy. As a result of this policy of deducting one hour from his pay each day, while failing to provide a one-hour meal break, Plaintiff Guampearias was paid nothing for these hours, which were always or almost always payable at the overtime rate.

46. Plaintiff Guampearias was subject to Defendants' Time Shaving Practices. He was paid nothing for those hours that Defendants shaved from his time, which were always or almost always payable at the overtime rate.

47. Defendants failed to issue Plaintiff Guampearias any wage statements in violation of NYLL 195(3).

48. By failing to issue wage statements, Defendants hid their violations of wage and hour laws and prevented Plaintiff Guampearias from determining and seeking payment for the precise amount of his unpaid wages.

49. Defendants failed to issue Plaintiff Guampearias any notification of pay rate in violation of NYLL 195(1)(a).

50. By failing to issue notifications of pay rate, Defendants hid their violations of wage and hour laws and prevented Plaintiff Guampearias from fully understanding his rights under the labor law.

51. Had Defendants issued such notifications of pay rate, they would have informed Plaintiff that he was entitled to be paid $30.00 per hour for overtime hours worked. This would have exposed the unlawful nature of the Defendant's No Overtime Premium Policy to Guampearias and other BNJ Laborers. Moreover, had he known to demand his lawful pay, he could have afforded necessities to improve his standard of living.

Plaintiff Murillo

52. Plaintiff Murillo was employed by Defendants as a non-exempt fabricator and installer from early April 2023 until late August 2024.

53. Defendants paid Plaintiff Murillo in cash off the books.

54. During the relevant period, Plaintiff Murillo's regular hourly rate was $32.00 per hour.

55. Plaintiff Murillo was subject to Defendant's No Overtime Premium Pay Policy. Plaintiff Murillo regularly worked more than forty hours in a workweek, but he was never paid overtime premium pay for working overtime hours.

56. In at least one week in March 2024, Plaintiff Murillo worked more than 60 hours but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

57. Plaintiff Murillo was subject to the Defendants' Automatic Deduction Policy. As a result of this policy of deducting one hour from his pay each day, while failing to provide a one-hour meal break, Plaintiff Murillo was paid nothing for these hours, which were always or almost always payable at the overtime rate.

58. Plaintiff Murillo was subject to Defendants' Time Shaving Practices. He was paid nothing for those hours that Defendants shaved from his time, which were always or almost always payable at the overtime rate.

59. Defendants failed to issue Plaintiff Murillo any wage statements in violation of NYLL 195(3).

60. By failing to issue wage statements, Defendants were able to hide their violations of wage and hour laws and prevent Plaintiff Murillo from determining and seeking payment for the precise amount of his unpaid wages.

61. Defendants failed to issue Plaintiff Murillo any notification of pay rate in violation of NYLL 195(1)(a).

62. By failing to issue notifications of pay rate, Defendants were able to hide their violations of wage and hour laws and prevent Plaintiff Murillo from fully understanding his rights under the labor law.

63. Had Defendants issued such notifications of pay rate, they would have informed Plaintiff that he was entitled to be paid $48.00 per hour for overtime hours worked. This would have exposed the unlawful nature of Defendant's No Overtime Premium Policy, to Mr. Murillo and other BNJ Laborers. Moreover, had he known to demand his lawful pay, he could have afforded necessities to improve his standard of living.

Plaintiff Guerrero

64. Plaintiff Guerrero was employed by Defendants as a non-exempt installer from approximately June 2023 through approximately August 2024.

65. Defendants paid Plaintiff Guerrero in cash off-the-books.

66. During the relevant period, Plaintiff Guerrero's regular hourly rate was $17.00 per hour.

67. Plaintiff Guerrero was subject to the Defendant's No Overtime Premium Pay Policy. He regularly worked more than forty hours in a workweek, but he was never paid overtime premium pay for working overtime hours.

68. In at least one week in June 2024, Plaintiff Guerrero worked more than 53 hours but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

69. Plaintiff Guerrero was subject to the Defendants' Automatic Deduction Policy. As a result of this policy of deducting one hour from his pay each day, while failing to provide a one-hour meal break, Plaintiff was paid nothing for these hours, which were always or almost always payable at the overtime rate.

70. Plaintiff Guerrero was subject to Defendants' Time Shaving Practices. He was paid nothing for those hours that Defendants shaved from his time, which were always or almost always payable at the overtime rate.

71. Defendants failed to issue Plaintiff Guerrero any wage statements.

72. By failing to issue wage statements, Defendants were able to hide their violations of wage and hour laws and prevent Plaintiff Guerrero from determining and seeking payment for the precise amount of his unpaid wages.

73. Defendants failed to issue Plaintiff Guerrero any notification of pay rate. By failing to issue notifications of pay rate, Defendants were able to hide their violations of wage and hour laws and prevent Plaintiff Guerrero from determining and seeking payment for the precise amount of his unpaid wages.

74. Defendants failed to issue Plaintiff Guerrero any notification of pay rate in violation of NYLL 195(1)(a).

75. Had Defendants issued such notifications of pay rate, they would have informed Plaintiff that he was entitled to be paid $25.50 per hour for overtime hours worked. This would have exposed the unlawful nature of Defendant's No Overtime Premium Policy to Plaintiff Guerrero and other BNJ Laborers.

76. In at least one week in June 2024, Plaintiff Guerrero worked more than 55 hours but received no overtime premium pay and was not paid at all for many of the overtime hours he worked that week.

## COLLECTIVE ACTION ALLEGATIONS

77. FLSA Plaintiffs bring this case as an "opt-in" collective action on behalf of similarly situated employees of Defendants pursuant to 29 U.S.C. § 216(b).

78. FLSA Plaintiffs, on behalf of themselves and the prospective collective class, seek relief on a collective basis, challenging Defendants' failure to pay overtime.

79. The Collective Class is defined as follows: "All similarly situated laborers, including but not limited to fabricators, installers, and installers' helpers of BNJ Marble/Cabinets Ltd. from June 20, 2022, to the present, who elect to opt-in to this action."

80. FLSA Plaintiffs are similar to other members of the Collective because: 1) members of the Collective Class worked more than forty hours in a workweek without overtime premium pay; and 2) members of the Collective Class have been subject to Defendants' same policies and practices through which they were deprived of overtime compensation including Defendants' No Overtime Premium Policy, Automatic Deduction Policy, and Time Shaving Practices.

81. FLSA Plaintiffs and members of the Collective all perform or performed similar duties and were all deprived of overtime premium pay due to them as a result of Defendants' No Overtime Premium Policy, Automatic Deduction Policy, and Time Shaving Practices.

82. FLSA Plaintiffs' experience is typical of the experiences of the other Collective class members. Defendants' failure to pay overtime wages at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of FLSA Plaintiffs.

83. With respect to Defendants' FLSA overtime violations, their unlawful conduct has been widespread, repeated, consistent, and willful.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs bring this action as a prospective class action on behalf of themselves, and all other persons similarly situated.

85. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiffs seek the certification of a class of all persons who, during the relevant time period of August 20, 2019, to the date of final judgment in this matter, have been employed by Defendants as a non-exempt laborers, including but not limited to fabricators, installers, and installers' helpers (hereinafter referred to as the "BNJ Laborer Class").

86. The BNJ Laborer Class includes more than forty similarly situated workers who have not been paid for all hours worked, have not been paid overtime pay due to them, and have not received proper wage statements or notifications of pay rate. Members of the Laborer Class would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to

opt out of a certified class.

87. The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

88. There are questions of law and fact common to all members of the class, and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

89. Common questions of law and fact include, but are not limited to, the following:

a. Whether each of the Defendants was a joint employer of the BNJ Laborers;

b. Whether Defendants have failed to pay BNJ Laborers overtime wages at one and one-half times their regular rate of pay for hours worked in excess of forty hours;

c. Whether Defendants' Automatic Deduction Policy deprived the BNJ Laborers of wages for all hours worked;

d. Whether Defendants' Automatic Deduction Policy deprived the BNJ Laborers of overtime;

e. Whether Defendants' Time Shaving Practices deprived the BNJ Laborers of overtime;

f. Whether Defendants' No Overtime Premium Policy deprived the BNJ Laborers of overtime;

g. Whether Defendants paid BNJ Laborers partially or wholly in cash off the books for the purpose of concealing the underpayment of wages;

h. Whether Defendants can satisfy their burden of proving a good faith basis for believing that any underpayment of wages was in compliance with the law;

i. Whether Defendants have systematically failed to provide proper wage payment statements as required by the New York Labor Law; and

j. Whether Defendants have systematically failed to provide proper Wage Theft Prevention Act notifications of pay rate as required by the New York Labor Law.

90. Plaintiffs' claims are typical of the claims of all class members, and Defendants' anticipated affirmative defenses thereto are typical of the Defendants' anticipated affirmative defenses to the claims of other class members.

91. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated to and have suffered similar injuries as the members of the class they seek to represent.

92. Plaintiffs have retained counsel capable of handling class action suits. Neither Plaintiffs nor their counsel have an interest that is in conflict with the class or which might cause them not to vigorously pursue this action.

93. Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices or could, as a practical matter, dispose of the legal claims of class members not parties to such separate adjudications.

94. Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the

fair and efficient adjudication of the controversy.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**(Overtime Violations: FLSA)**

95. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

96. The FLSA Plaintiffs bring this claim on behalf of themselves and all similarly situated employees who opt in to the action.

97. At all relevant times, Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

98. Defendants employ or employed numerous BNJ Laborers, including the FLSA Plaintiffs and other similarly situated BNJ Laborers as non-exempt employees.

99. At all relevant times, BNJ has had gross operating revenues in excess of $500,000.00 per year and satisfies the threshold test for the "enterprise" requirement under the FLSA.

100. The FLSA requires each covered employer, such as Defendants, to compensate their non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

101. Defendants failed to pay the FLSA Plaintiffs and the prospective collective class members one and one-half times their regular hourly rates for all hours worked in excess of forty in a workweek.

102. Defendants have not acted in good faith and did not have a reasonable basis for believing that they did not violate the FLSA.

103. Defendants' violations of the FLSA were willful, as evidenced by Defendants' failure to issue notifications of pay rate to laborers informing of their proper overtime rate, complete disregard for their obligation to pay overtime, and the fact that BNJ Laborers were at all relevant times, clearly neither non-exempt employees.

104. Similarly situated BNJ Laborers would benefit from an opportunity to receive notice of the lawsuit and an opportunity to opt-in to the action.

105. As a result of Defendants' violation of FLSA, the FLSA Plaintiffs and any Opt-in Plaintiffs have been injured and are entitled to damages for unpaid overtime, liquidated damages, and attorneys' fees costs, disbursements, and interest thereon.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(Overtime Violations: New York Labor Law)**

106. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

107. This cause of action is brought against Defendants for failure to pay overtime for work performed by Plaintiffs and prospective Class Members in excess of forty hours per week pursuant to NYLL 191, 663(1).

108. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of New York Labor Law §§ 2 and 651.

109. At all times relevant Plaintiffs were Defendants' non-exempt employees within the meaning of New York Labor Law §§ 2 and 651.

110. Defendants willfully required, suffered, or permitted Plaintiffs to work overtime and willfully failed to pay them overtime compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under New York Labor Law § 650; 12 NYCRR § 146-1.4.

111. As a result of Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
**(Failure to Pay Wages)**

112. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113. This cause of action is brought against Defendants for failure to pay wages for work performed by Plaintiffs and prospective Class Members pursuant to NYLL §§ 191, 663(1).

114. New York Labor Law requires that wages be paid on an employer's regular payday for all hours worked and NYLL 663(1) and 198 require the payment of all wages owed.

115. Defendants have failed to pay Plaintiffs and prospective Class Members all wages for the hours they each worked for Defendants.

116. Due to Defendants' violations of the New York Labor Law, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**

**(Violation of the Wage Theft Prevention Act: New York Labor Law)**

117. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

118. New York Labor Law § 195(1)(a) requires Defendants to provide Plaintiffs with notifications of pay rate at the commencement of their employment, in both English and their primary language, and to preserve those records for a period of six years.

119. Those statements must include: the employee's rate or rates of pay, including overtime rate of pay; where applicable; how the employee is paid; and any allowances taken as part of the minimum wage, and information identifying the employer.

120. The notices serve "as a means "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." Denying Plaintiff such notice impinged on Plaintiff's interests in not only being paid what is owed, but also in being able to advocate for the receipt of proper pay, or seeking alternate employment.

121. Defendants failed to furnish accurate notifications of pay rate in either English or Spanish in violation of the Wage Theft Prevention Act.

122. Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(1)(a); 198(1)(d) plus costs, interest, and reasonable attorneys' fees.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Violation of the Wage Theft Prevention Act: New York Labor Law)**

123. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

124. New York Labor Law § 195(3) requires Defendants to provide Plaintiffs with wage statements with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

125. Plaintiffs and other BNJ Laborers suffered concrete harm as a result of Defendants' failure to furnish notifications of pay rate. They were not informed of their status as non-exempt employees, nor were they informed of their right as non-exempt employees to receive overtime premium pay when working more than forty-hours in a workweek. Such disclosure would have exposed the unlawful nature of the Defendant's No Overtime Premium Policy to Plaintiffs and other BNJ Laborers. Moreover, had they known to demand their lawful pay, they could have afforded necessities to improve their standard of living.

126. Denying Plaintiff such wage statement notifications impinged on Plaintiff's interests in not only being paid what is owed, but also in being able to advocate for the receipt of proper pay, or seeking alternate employment.

127. Defendants failed to furnish Plaintiffs with wage statements in compliance with the Wage Theft Prevention Act.

128. Plaintiffs and other BNJ Laborers suffered concrete harm as a result of Defendants' failure to furnish wage statements. They were unable to determine the precise number of hours they worked in order to calculate the wages owed to them.

129. Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(3)(a); 198(1)(d) plus costs, interest, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, demand as follows:

A. A ruling conditionally certifying the Collective Class, an order authorizing the issuance of the notice to the members of the Collective, and an opportunity to opt-in to the case;

B. An Order Certifying the BNJ Laborer Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; designating Plaintiffs as class representatives; and designating of Plaintiffs' counsel as class counsel;

C. An award to Plaintiffs and any opt-in Plaintiffs under the FLSA and NYLL for unpaid overtime wages and an additional amount equal as liquidated damages pursuant to each statute;

D. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for statutory damages for Defendant's violations of the pay rate notification provisions of the Wage Theft Prevention Act;

E. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for statutory damages for Defendant's violations of the wage statement requirements of the Wage Theft Prevention Act;

F. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for pre-judgment and post-judgment interest;

G. An award to Plaintiffs and any opt-in Plaintiffs and Class Members for the cost of this action, together with reasonable attorneys' fees; and

H. Such other and further relief as this Court may deem necessary and proper.

Dated: Lynbrook, New York
September 11, 2025

**THE MARLBOROUGH LAW FIRM, P.C**

*By:*

Christopher Marlborough (CM6107)
375 Sunrise Highway, Suite 3
Lynbrook, New York 11563
(212) 991-8960
chris@marlboroughlawfirm.com

Bruce McBrien
MCBRIEN LAW PC
140 Fell Ct.
Hauppauge, NY 11788
(631) 406-9799
bmcbrien@mcbrienlaw.com

*Attorneys for Plaintiffs*